# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

JAMES LYNN KIDWELL,        )
)
        Plaintiff,        )
)
vs.        )        Case No. 13-CV-612-TCK-PJC
)
OKLAHOMA DEPARTMENT OF        )
CORRECTIONS; DR. LARRY BOWLER;        )
DR. SCOTT HAMMACK; JODY JONES;        )
GENESE MCCOY        )
)
        Defendants.        )

## OPINION AND ORDER

On September 16, 2013, Plaintiff, a prisoner appearing pro se, filed a 42 U.S.C. § 1983 civil

rights complaint (Dkt. # 1) against the Oklahoma Department of Corrections; Larry Bowler, M.D.,

a physician at Dick Conner Correctional Center (DCCC); Dr. Scott Hammack, dentist at DCCC;

Jody Jones, Correctional Health Service Administrator at DCCC; and Genese McCoy, Medical

Service Administrator at DCCC. Plaintiff also filed a motion to proceed in forma pauperis (Dkt. #

2). By Order filed September 19, 2013 (Dkt. # 3), the Court granted Plaintiff's motion to proceed

in forma pauperis and dismissed the Oklahoma Department of Corrections as a party to this suit

based on Eleventh Amendment immunity. In response to the complaint, the remaining defendants

prepared and filed a Special Report (Dkt. # 15) and filed a Motion to Dismiss or, in the alternative,

a Motion for Summary Judgment (Dkt. # 17). Plaintiff filed a response (Dkt. # 22) and Defendants

filed a reply to Plaintiff's response (Dkt. # 23).

For the reasons set forth below, the Court finds that Plaintiff's claims against Defendants

Jones and McCoy are dismissed without prejudice and Defendants Hammack and Bowler are

entitled to summary judgment in their favor as there is no genuine dispute as to any material fact.

## *BACKGROUND*

In the "Nature of Case" section of the complaint, Plaintiff writes: "[t]his is a civil rights lawsuit alleging deliberate indifference to Plaintiff's serious medical needs as a result of the deliberate withholding of medical care by various care providers employed by the Oklahoma Department of Corrections. Plaintiff seeks injunctive and declaratory relief." (Dkt. # 1 at 3). Plaintiff identifies a single cause of action:

> Count I: Dr. Larry Bowler, Dr. Scott Hammack, Chief Health Services Administrator Jody Jones and the Chief Medical Officer's Designee, Genese McCoy, have all displayed deliberate indifference to Plaintiff's serious medical need, in violation of the Eighth Amendment to the United States Constitution, in denying Plaintiff's request for dentures.

Id. As relief, Plaintiff requests "declaratory relief in the form of an order requiring the ODOC to provide Plaintiff with a set of dentures or any other relief that this Court may deem appropriate." Id. at 6.

Plaintiff's complaint is based on the denial of dentures by Oklahoma Department of Corrections (DOC). Plaintiff arrived into DOC custody on January 21, 2005, after his conviction on three counts of first degree murder. (Dkt. # 15 at 1). Plaintiff was sentenced to life without the possibility of parole for each murder, with the sentences to run consecutively. Id. When Plaintiff arrived, he had only one tooth after thirteen teeth were extracted "while he was in the County Jail." Id. Plaintiff alleges that since being transferred to Dick Conner Correctional Center (DCCC) in June 2006, he has sought dental services "to no avail." (Dkt. # 1 at 4). Plaintiff complains that his "condition has grown increasingly worse, having lost a significant amount of weight, suffering from continuing pain and misalignment of his jaw due to the way Plaintiff has been forced to 'mash' his food." Id. Plaintiff's complaints include chronic constipation, inability to chew his food because

his "gums do not meet," "facial distortion," "psychological problems, including low self-esteem and an aversion to interaction with staff and inmates," and "often unintelligible" speech. <u>Id.</u> at 4-5.

Plaintiff alleges that he "has been 'ping-ponged' back and forth between Defendant Bowler and Defendant Hammack. <u>Id.</u> at 5. He also alleges that Defendant Hammack was deliberately indifferent to a serious medical need because Defendant Hammack indicated that there was "no dental need for the dentures" and because he offered a soft diet to address the symptom of chronic constipation rather than addressing "the underlying problem." <u>Id.</u> Plaintiff alleges he repeatedly requested treatment from Defendant Bowler. <u>Id.</u> Plaintiff alleges Defendant Jones was deliberately indifferent when she refused to answer his grievance regarding his serious medical need for dentures and placed Plaintiff on a 12-month grievance restriction. <u>Id.</u> Plaintiff alleges Defendant McCoy acted with deliberate indifferent to his serious medical needs when she "refus[ed] to rescind the grievance restriction and den[ied] the grievance." <u>Id.</u> Plaintiff also alleges that Defendant McCoy "has the authority to require that Plaintiff be treated according to his needs." <u>Id.</u>

### UNDISPUTED MATERIAL FACTS

When Plaintiff arrived into the custody of DOC on January 21, 2005, he weighed 209 lbs. and he had only one tooth. (Dkt. # 15 at 2, 25). At the time, DOC dental policy was that "dentures would not be provided to anyone who arrived into [DOC] custody who was edentulous, unless there was a medical necessity." <u>Id.</u> at 1-2. On March 15, 2005, Plaintiff complained that he had a "wisdom tooth coming in" and requested dentures. <u>Id.</u> at 27. After being seen for his complaint, Plaintiff was advised of DOC's "edentulous policy" and that no treatment was necessary for his tooth. <u>Id.</u> On February 6, 2006, Plaintiff was seen by the dentist who then determined the tooth

needed to be removed.  Id.  After postponing removal of the tooth, the dentist finally extracted

Plaintiff's tooth on October 3, 2006.  Id.

Approximately a week later, Plaintiff complained of pain in the area where the tooth was

extracted.  Id.  An examination revealed the area was "full of debris - food, popcorn shells, etc."  Id.

The record reflects that, at that time, Plaintiff was recommended for an evaluation for an exemption

to the DOC policy in order to receive a full set of dentures and "Pr II" was noted in Plaintiff's file.[1]

Id.  On May 5, 2007, Plaintiff submitted a "Request for Medical Services" (RMS) requesting an

update on "getting fitted for dentures."  Id. at 32.  Plaintiff received a response on May 7, 2007,

stating that he was on the "Priority II" list for dentures and an appointment would be scheduled

when his "name comes up."  Id.  On August 6, 2007, Plaintiff underwent an evaluation for dentures.

Id. at 28.  The evaluation revealed Plaintiff weighed 252.5 lbs., had a "slight maltremor and enlarged

tongue."  Id.  The evaluator noted an exemption to the policy would be filed for Plaintiff.  Id.

---

[1]The Court notes that "Pr II" signifies Plaintiff was placed into the "Priority II" category for prioritization of dental needs.  The DOC Dental Policy (OP-140124) provided by Defendants, states that "an offender will be classified by the highest priority that his/her condition by quadrant indicates and treatment by quadrant will be provided whenever possible."  (Dkt. # 15 at 98).  The policy goes on to state that "[a]ccess to dental health care will be prioritized in accordance with the offender's current classification."  Id.  "Priority II" classification "[i]ncludes pathosis of the oral cavity that may not provide an immediate threat to the offender's health, but in the dentist's opinion, if left untreated for three to six months will become a Priority I problem."  Id. at 99.  However, the policy also states,

> Complete and partial dentures will not be available to offenders unless there is an identified medical necessity.  A medical necessity could include but is not limited to:
> a.     A BMI less than 18.5;
> b.     An obturator when used in conjunction with maxillo-facial reconstruction; or
> c.     Treatment of certain gastrointestinal diseases in which the inability to chew food may adversely affect the patient's condition.

Id. at 103 (Prosthetic Dental Appliances).

On October 22, 2007, Plaintiff submitted a RMS inquiring about the status of his approval to receive dentures. Id. at 33. The response informed Plaintiff that an "exception to the policy has been filed, we have not heard back from committee at this time. We will let you know the status as soon as we know." Id. Plaintiff submitted another RMS on April 27, 2008 requesting an update, but did not receive a response. Id. at 34. He submitted a RMS on September 4, 2008 and was informed that he was on the Priority III list and an appointment would be made "as soon as your name comes to the top of the list." Id. at 35.

On September 17, 2009, Plaintiff submitted a RMS stating that he is "in great need of dentures [because of] serious digestion issues, in part from not being able to chew my food." Id. at 37. He also wrote, "[t]his is my second request in as many weeks." Id. Plaintiff was offered a "pureed diet until the dentist has addressed this issue." Id. Plaintiff submitted a "Request to Staff" (RTS) on September 13, 2010 requesting dentures. Id. at 38. He was told he is on the Priority III list and he "will be seen when we get to that list." Id. Plaintiff submitted a grievance appeal on January 4, 2011. Id. at 39. On February 8, 2011, Defendant McCoy denied relief stating that "there is no medical necessity for dentures at this time" and that "according to departmental policy, since you arrived edentulous, you are not entitled to have dentures fabricated." Id.

Plaintiff next submitted a RMS on February 13, 2013. Id. at 57. Plaintiff requested to talk to the dentist about getting dentures. DOC staff set an appointment for March 21, 2013. Plaintiff failed to show for this appointment, id. at 59, and submitted a RMS requesting a new appointment that did not fall on a Thursday because Thursday was Plaintiff's only day to go to the canteen. Id. at 61. DOC staff told Plaintiff Thursday was the only day his unit was scheduled to see the dentist and scheduled an appointment for May 9, 2013. Id. Plaintiff arrived for this appointment and saw

Defendant Hammack.  Id. at 63.  Defendant Hammack informed Plaintiff he was not eligible for dentures and asked if Plaintiff wanted to be put on a soft diet because he was unable to chew. Plaintiff refused to be put on the soft diet.  Id.

On May 15, 2013, Plaintiff submitted an RTS to Defendant Hammack stating:

I've told you of my problems with chronic constipation, and the pain associated with that.  My fears of having an impacted bowel obstruction due to the difficulty in my bowel movements and going 3 or 4 days without a bowel movement or more.  The problem has been treated with 4 or 5 different medications with limited success. . . . I believe there is a medical necessity for my having dentures made for me, and it is the only solution for my long term health needs, as past and current treatment is not working.

Id. at 84-85.  Defendant Hammack responded that "no dental need for a set of dentures is indicated. The soft diet offered before . . . can still be done if you request a soft diet. You are not eligible for dentures according to DOC criteria.  An appointment on 5-23-13 has been made with the physician for you to address the constipation problem."  Id. at 84.  On May 20, 2013, Plaintiff submitted an Offender Grievance Report Form to Defendant Jones and Terry Martin and attached the RTS dated May 15, 2013.  Id. at 86.  Plaintiff stated he was "still . . . experiencing health problems from not having teeth, yet I have been denied the opportunity to have dentures made.  I have experienced chronic constipation and accompanying pain and discomfort."  Id. at 86.  On June 6, 2013, Defendant Jones returned Plaintiff's grievance "unanswered" and issued a 12-month grievance restriction.  Id. at 87.  Defendant Jones stated that Plaintiff had been issued a grievance warning on December 27, 2012, regarding an optometrist related grievance.  Defendant Jones also stated that Plaintiff's grievance for dentures was "originally addressed with you through the grievance process in 2010 with final response for the Reviewing Authority dated January 4, 2011 [sic]."  Id. Defendant Jones cited to DOC policy OP-090124, which states "[t]he ruling of the administrative

review authority or chief medical officer is final and will conclude the administrative remedy available to the inmate/offender within the jurisdiction of the Oklahoma Department of Corrections." Id.

On June 10, 2013, Plaintiff submitted a Misconduct/Grievance Appeal Form to Administrative Review Authority. Id. at 91. He indicated that there was "[p]robable error committed by the reviewing authority in the decision such as would be grounds for reversal." Id. Plaintiff also stated that

> I grieved an ongoing issue that was last addressed in 2011. This is an ongoing, continually worsening issue that should not make me subject to a grievance restriction, i.e., it is not repetitive. I have only grieved my current condition, not readdressing a condition that was the same now as in 2011. My grievance lies in my not having any teeth to chew my food, causing me constipation problems and weight loss. I need the DCCC Dentist to indicate a need for dentures and require that they be made.

Id. at 91-92. Defendant McCoy responded, stating that the grievance restriction imposed was appropriate and will be upheld. Id. at 93.

After filing the Offender Grievance Form, Plaintiff was seen by Defendant Bowler on May 23, 2013. Id. at 65. Defendant Bowler noted that Plaintiff weighed 223 lbs. and complained of constipation. Id. at 69. The record also demonstrates that Plaintiff had been prescribed Doxepin Hydrochloride, an antidepressant, from March 28, 2013-June 25, 2013; MiraLax, a laxative, from February 21, 2013-August 19, 2013; and Ibuprofen (800 mg), three times a day for headaches/pain, from December 6, 2012-June 3, 2013. Id. at 70. Defendant Bowler noted that Plaintiff was requesting dentures "via medical necessity." Defendant Bowler denied the request stating, "[n]o medical necessity found to have dentures." Id.

*ANALYSIS*

Before the Court is Defendants' Motion to Dismiss or, in the alternative, Motion for Summary Judgment. <u>See</u> Dkt. # 17. Defendants argue four propositions in support of their motion. First, Defendants argue that Plaintiff fails to state a claim for deliberate indifference. Second, Defendants argue that Plaintiff fails to show personal participation by Defendants McCoy, Bowler, and Jones. Third, they argue Plaintiff failed to exhaust his administrative remedies. Finally, Defendants argue they are entitled to qualified immunity.

**A.     Exhaustion of administrative remedies**

Pursuant to the Prison Litigation Reform Act (PLRA), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This provision applies "to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." <u>Porter v. Nussle</u>, 534 U.S. 516, 532 (2002). Moreover, exhaustion of administrative remedies under the PLRA is required for all inmates seeking relief in federal district court regardless of the type of relief available under the institutional administrative procedure. <u>Woodford v. Ngo</u>, 548 U.S. 81 (2006); <u>Booth v. Churner</u>, 532 U.S. 731, 741 (2001). The statutory exhaustion requirement is mandatory, and this Court is not authorized to dispense with it. <u>See</u> <u>Beaudry v. Corr. Corp. of America</u>, 331 F.3d 1164, 1167 n.5 (10th Cir. 2003). There is no futility exception to § 1997e(a)'s exhaustion requirement. <u>Booth</u>, 532 U.S. at 741 n. 6

("[W]e stress the point . . . that we will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise.").

To satisfy the exhaustion requirement, an inmate must comply "with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of is proceedings." Ngo, 548 U.S. at 90-91. As a result, "the PLRA exhaustion requirement requires proper exhaustion." Id. at 93; see also Jones v. Bock, 549 U.S. 199 (2007); Jernigan v. Stuchell, 304 F.3d 1030, 1032 (10th Cir. 2002). When a prisoner's claim has been rejected by prison authorities on procedural grounds, that claim "should be dismissed from the plaintiff's complaint with prejudice." Kikumura v. Osagie, 461 F.3d 1269, 1290 (10th Cir. 2006), *overruling on other grounds recognized in* Robbins v. Oklahoma, 519 F.3d 1242 (10th Cir. 2008).

Plaintiff's claim falls squarely within the PLRA's exhaustion requirement because Plaintiff was "confined in any jail, prison, or other correctional facility" when his claim arose. Cf. Robbins v. Chronister, 402 F.3d 1047, 1054 (10th Cir. 2005) ("Constitutional claims arising *before* the events causing the plaintiff's incarceration are unrelated to prison confinement."). DOC has promulgated a procedure, OP-090124, for offender grievances. See Dkt. # 17-2. First, an offender must try to resolve his complaint informally. If not resolved informally, he must submit a Request to Staff (RTS), within seven calendar days of the incident, to the appropriate staff member. If the complaint is not resolved, then the offender may submit a formal grievance, using the Offender Grievance Report Form (GRF), within 15 calendar days of the incident or the date of the response to the RTS, whichever is later. The GRF is reviewed and a Grievance Response from the reviewing authority is issued. An inmate may appeal the grievance response, within 15 calendar days or receipt of the

response, upon specified grounds only. The Administrative Review Authority (ARA), or chief medical officer, as appropriate, performs the final review of an appeal and issues a ruling. Such ruling is DOC's final ruling.

Defendants do not dispute that Plaintiff exhausted his state remedies for the grievance restriction placed on him by Defendant Jones. (Dkt. # 17 at 15). Defendants complain, however, that Plaintiff failed to exhaust the unanswered grievance, the request for dentures. Id. The summary judgment record before the Court provides the following chronology of Plaintiff's efforts to exhaust administrative remedies:

- On May 9, 2013, Plaintiff had an appointment with Defendant Hammack, DDS. Plaintiff requested dentures. Defendant Hammack informed Plaintiff that he was not eligible and offered Plaintiff a soft diet. Plaintiff refused the soft diet. See Dkt. # 15 at 63.

- On May 15, 2013, Plaintiff submitted a RTS to Defendant Hammack, stating that he has a medical necessity for dentures due to chronic constipation and the pain that has not gotten better. Id. at 84.

- On May 16, 2013, Defendant Hammack responded that there was "[n]o dental need for a set of dentures" and told Plaintiff he was not eligible for dentures "according to DOC criteria." Defendant Hammack again offered Plaintiff the soft diet and made an appointment with the DCCC physician to address the constipation problem. Id.

- On May 20, 2013, Plaintiff submitted an Offender Grievance Form to Defendant Jones and Terry Martin. Plaintiff stated that he has "still been experiencing health problems from not having teeth" and has been denied dentures. He also states that he has "experienced chronic constipation and accompanying pain and discomfort." Id. at 86.

- On June 6, 2013, Defendant Jones returned Plaintiff's grievance unanswered and informed him that he was being placed on a 12-month grievance restriction for violation of DOC policy OP-090124. Id. at 87.

- On June 10, 2013, Plaintiff submitted a Misconduct/Grievance Appeal Form to ARA. He complained about the grievance restriction, stating that he was "griev[ing] only my current condition, not readdressing a condition that was the same now as in 2011." Plaintiff also stated, "[m]y grievance lies in my not having any teeth to chew

my food, causing me constipation problems and weight loss. I need the DCCC Dentist to indicate a need for dentures and require that they be made." Id. at 91-92.

-       On July 2, 2013, Defendant McCoy responded that the grievance restriction was appropriate and would be upheld. Defendant McCoy informed Defendant that the "nature of your complaint set forth in your grievance . . . involves an issue that was already addressed in a previous grievance appeal . . . on January 4, 2011 ." Id. at 93.

In response to Defendants' claims, Plaintiff argues that he did not fail to exhaust his administrative remedies. (Dkt. # 22 at 3). Plaintiff states that "ODOC Grievance Procedures policy, OP-090124, does not contain any additional requirements for a grievant placed on 'grievance restriction' to appeal the denial of the grievance that predicated the 'grievance restriction.'" Id. Defendants do not address this claim. See Dkt. # 23.

DOC policy OP-090124 articulates that proper procedures for offender grievances. See Dkt. # 17-2. However, a review of DOC policy OP-090124 provides no guidance on grievance warnings and whether a grievance warning issued for one matter applies solely to subsequent grievances on that particular issue or applies to all subsequent grievance appeals regardless of the subject of the grievance. Here, the grievance warning issued to Plaintiff in December 2012 followed grievances submitted with regard to an optometry issue. Defendant Jones applied that grievance warning to Plaintiff's grievance appeal for dentures submitted in May 2013.

Relevant to grievance restrictions, the DOC policy provides that "[i]f the determination of abuse of the process is taken at the first level of review, the action is appealable to the appropriate administrative review authority." DOC OP-090124(IX)(A)(2). Plaintiff filed an appeal to the ARA after Defendant Jones issued a grievance restriction, appealing both the grievance restriction and the

denial of dentures.[2]  Plaintiff's appeal was returned answered.  The response upheld the grievance restriction and stated that the "nature of the complaint" was previously addressed by a formal response in February 2011.  (Dkt. # 15 at 93).  It was not rejected for violation of the proper filing procedures.

As a result, the Court finds that Plaintiff exhausted available administrative remedies.  In addition to enforcing the grievance restriction, Defendant McCoy's answer to Plaintiff's appeal also provided a substantive response to the denial of dentures.  Defendant McCoy told Plaintiff the "nature of the complaint" was addressed in a previous appeal.  This answer stated a reason for affirming the decision to deny Plaintiff's request for dentures.  Therefore, the Court concludes that Plaintiff exhausted his administrative remedies and Defendants are not entitled to summary judgment in their favor for failure to exhaust.

**B.      No personal participation by Defendants McCoy and Jones**

As stated above, Defendants filed a motion to dismiss or, in the alternative, a motion for summary judgment.  (Dkt. # 17).  Upon review of the complaint, the Court finds Plaintiff's complaint fails to state a claim upon which relief may be granted against Defendants McCoy and Jones.

**1.      Dismissal standards**

To avoid dismissal for failure to state a claim under FED. R. CIV. P. 12(b)(6), a complaint must present factual allegations, assumed to be true, that "raise a right to relief above the speculative

---

[2]According to DOC OP-090124(VII)(B)(1)(e), Plaintiff's appeal contained two issues in violation of DOC procedures ("grievances and grievances appeals [will be returned] unanswered when they contain more than one issue or when they fail to be filed in accordance with this procedure").  When an inmate violates this provision, the inmate is to be given an opportunity to correct any errors within 20 days after the inmate is notified of the improper filing.  Id.

level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). The complaint must contain "enough facts to state a claim to relief that is plausible on its face." Id. at 570. A court must accept all the well-pleaded allegations of the complaint as true, even if doubtful in fact, and must construe the allegations in the light most favorable to the plaintiff. Id. at 555. However, "when the allegations in a complaint, however true, could not raise a [plausible] claim of entitlement to relief," the cause of action should be dismissed. Id. at 558. The Court applies the same standard of review for dismissals under 28 U.S.C. § 1915(e)(2)(B)(ii) that is employed under FED. R. CIV. P. 12(b)(6) motions to dismiss for failure to state a claim. Kay v. Bemis, 500 F.3d 1214, 1217-18 (10th Cir. 2007).

A pro se plaintiff's complaint must be broadly construed under this standard. Erickson v. Pardus, 551 U.S. 89, 94 (2007); Haines v. Kerner, 404 U.S. 519, 520 (1972). The generous construction to be given the pro se litigant's allegations "does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based." Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991). A reviewing court need not accept "mere conclusions characterizing pleaded facts." Bryson v. City of Edmond, 905 F.2d 1386, 1390 (10th Cir. 1990); see also Twombly, 550 U.S. at 555 ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (quotations and citations omitted)). The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." Whitney v. New Mexico, 113 F.3d 1170, 1173-74 (10th Cir. 1997). Thus,

13

"conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." Hall, 935 F.2d at 1109-10 (10th Cir. 1991).

### 2. Application of dismissal standard

Plaintiff filed his complaint pursuant to 42 U.S.C. § 1983. Section 1983 provides a claim for relief against state actors for violation of a plaintiff's federal rights. Becker v. Kroll, 494 F.3d 904, 914 (10th Cir. 2007). To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the alleged violation was committed by a person acting under color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); Anderson v. Suiters, 499 F.3d 1228, 1232-33 (10th Cir. 2007). A defendant must personally participate in the alleged conduct causing the constitutional violation to be held liable under § 1983. Henry v. Storey, 658 F.3d 1235, 1241 (10th Cir. 2011); Trujillo v. Williams, 465 F.3d 1210, 1227 (10th Cir. 2006); Olson v. Stotts, 9 F.3d 1475, 1477 (10th Cir. 1993); Gallagher v. Shelton, 587 F.3d 1063, 1069 (10th Cir. 2009) (citing Foote v. Spiegel, 118 F.3d 1416, 1423 (10th Cir. 1997). A denial of a grievance without more does not adequately "support an 'affirmative link' between the[] defendants and any alleged constitutional violation." Gallagher, 587 F.3d at 1069 (citations omitted).

Plaintiff's only claim against Defendants McCoy and Jones is that they failed to answer his grievance. Plaintiff attempts to establish a "link" by stating that his grievance and appeal "informed" Defendants McCoy and Jones of Plaintiff's serious medical needs and by failing to address the grievance, they exhibited deliberate indifference to Plaintiff's serious medical need. (Dkt. # 1 at 5). Denial, "by itself without any connection to the violation of constitutional rights alleged by [a] plaintiff," is insufficient to establish personal participation under § 1983. Gallagher,

587 F.3d at 1069; see also Davis v. Arkansas Valley Correctional Facility, 99 F. App'x 838, 843 (10th Cir. 2004) (unpublished).[3]  Therefore, Plaintiff has failed to allege adequately a factual basis to support an "affirmative link" between Defendants McCoy and Jones to an alleged constitutional violation.  Plaintiff's claims against Defendants McCoy and Jones are dismissed without prejudice.

## C.    No constitutional violation by Defendants Bowler and Hammack

### 1.    Summary judgment standards

Summary judgment pursuant to FED. R. CIV. P. 56 is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993).  The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  Celotex, 477 U.S. at 317. "Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Kaul v. Stephan, 83 F.3d 1208, 1212 (10th Cir. 1996).  "Summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Durham v. Xerox Corp., 18 F.3d 836, 838-39 (10th Cir. 1994).

---

[3]This and all other unpublished opinions are not precedential but are cited for their persuasive value.  See Fed. R. App. P. 32.1; 10th Cir. R. 32.1.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87 (1986) (citations omitted).  In its review, the Court construes the record in the light most favorable to the party opposing summary judgment.  <u>Garratt v. Walker</u>, 164 F.3d 1249, 1251 (10th Cir. 1998).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff."  <u>Anderson</u>, 477 U.S. at 252.  In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  <u>Id.</u> at 251-52.

### 2.     Application of summary judgment standards

To state a § 1983 claim for a violation of a convicted prisoner's Eighth Amendment rights due to inadequate medical care, the prisoner must allege facts evidencing a deliberate indifference to his serious medical needs.  <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976).  "'[I]nadvertent failure to provide adequate medical care' does not rise to a constitutional violation."<u>Martinez v. Beggs</u>, 563 F.3d 1082 (10th Cir. 2009) (quoting <u>Estelle</u>, 429 U.S. at 105-106).  "Deliberate indifference" is defined as knowing and disregarding an excessive risk to an inmate's health or safety.  <u>Farmer v. Brennan</u>, 511 U.S. 825, 827 (1994).  In <u>Wilson v. Seiter</u>, 501 U.S. 294 (1991), the Supreme Court clarified that the deliberate indifference standard under <u>Estelle</u> has two components: (1) an objective requirement that the pain or deprivation be sufficiently serious; and (2) a subjective requirement that the offending officials act with a sufficiently culpable state of mind.  <u>Id.</u> at 298-99.  Negligence does

not state a claim under § 1983 for deliberate indifference to medical needs. <u>Hicks v. Frey</u>, 992 F.2d 1450, 1455 (6th Cir. 1993). Differences in judgment between an inmate and prison medical personnel regarding appropriate medical diagnosis or treatment are also not enough to state a deliberate indifference claim. <u>Westlake v. Lucas</u>, 537 F.2d 857, 860 n.5 (6th Cir. 1976).

Plaintiff alleges that he "has been 'ping-ponged' back and forth" between Defendants Bowler and Hammack in his effort to receive dentures. (Dkt. # 1 at 5). Plaintiff states that he "has lodged repeated complaints and requests for treatment" with Defendants Bowler and Hammack. <u>Id.</u> Plaintiff also claims that the soft diet Defendant Hammack offered to Plaintiff is a liquid diet because "the mechanically soft diet is not offered at DCCC." <u>Id.</u> Plaintiff argues by offering the soft diet, Defendant Hammack "indicate[d] a deliberate indifference to Plaintiff's serious medical need to the underlying problem, rather than the symptom of chronic constipation." <u>Id.</u> Defendants Bowler and Hammack argue that Plaintiff fails to provide evidence sufficient to prove the "subjective prong," that they acted with a sufficiently culpable state of mind. <u>See</u> <u>Wilson</u>, 501 U.S. at 299.

Defendant Bowler specifically argues that Plaintiff fails to "allege any facts that indicate that the delay in treatment has caused any of his medical issues" and that "even if Defendant Bowler knew of a risk of serious harm, he still acted reasonably in directing Plaintiff to request dentures from the dentist." (Dkt. # 17 at 9). The record provided by Defendants contains numerous RMS and RTS forms filed by Plaintiff during the previous eight years requesting dentures. <u>See</u> Dkt. # 15. Yet, none are expressly addressed to Defendant Bowler. Plaintiff was seen by Defendant Bowler on May 23, 2013 after a referral from Defendant Hammack. <u>Id.</u> at 65-70. The medical history provides a record of laboratory tests and results and a notation of three medications prescribed to

Plaintiff.  Id. at 66-70.  In Plaintiff's medical chart, Defendant Bowler noted that Plaintiff complained of chronic constipation, but found "[n]o medical necessity . . . to have dentures."  Id. at 70.

Defendant Hammack specifically argues that Plaintiff's claims "reveal [only] that he had a disagreement with Defendant Hammack over his condition and treatment."  (Dkt. # 17 at 8).  Defendant Hammack states that this "only shows negligence at worst, . . . not a deliberate indifference claim."  Id.  Defendant Hammack further argues that "[e]ven if [he] realized that such pain and constipation was a substantial risk of a serious harm, he did not disregard the risk [and] acted reasonably to alleviate or avoid that harm by prescribing a soft diet."  Id.  The record provided by Defendants includes notes by Defendant Hammack of an examination of Plaintiff on May 9, 2013 (Dkt. # 15 at 63), and Defendant Hammack's response to Plaintiff's RTS dated May 15, 2013, denying Plaintiff's request for dentures and setting up an appointment with the DCCC physician to address the constipation problem.  Id.

Delay in receiving dental care can constitute deliberate indifference to a serious medical need and thus violate an inmate's constitutional rights.  McGowan v. Hulick, 612 F.3d 636 (7th Cir. 2010).  A serious medical need includes "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  Ramos v. Lamm, 639 F.2d 559, 575 (10th Cir. 1980); Hunt v. Uphoff, 199 F.3d 1220, 1224 (10th Cir. 1999); see also Gobert v. Caldwell, 463 F.3d 339, 345 n. 12 (5th Cir. 2006); Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1187 (11th Cir. 1994).  "In certain circumstances, the need for dental care combined with the effects of not receiving it may give rise to a sufficiently serious medical need to show objectively a substantial risk of serious harm."

Farrow v. W., 320 F.3d 1235, 1243-44 (11th Cir. 2003) (citing Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989); Ramos, 639 F.2d at 576).

Federal courts have found that denial of dentures can rise to a serious medical need in combination with certain other symptoms. See, e.g., Farrow, 320 F.3d 1235 (valid deliberate indifference claim based on a fifteen-month delay in receiving dentures, during which time the plaintiff suffered from pain, bleeding, swollen gums, and periodic weight loss); Wynn v. Southward, 251 F.3d 588 (7th Cir. 2001) (inmate had a serious medical need for dentures based on claims of an inability to chew food, significantly impeding his ability to eat, and suffering bleeding, headaches, and disfigurement); Hunt v. Dental Dept., 865 F.2d 198, 200 (9th Cir. 1989) (plaintiff's allegations that his loss of dentures caused him severe pain, bleeding gums, breaking teeth, and inability to eat properly were sufficient to state a claim of deliberate medical indifference under § 1983); Williams v. Mason, 210 F. App'x 389, 390 (5th Cir. 2006) (unpublished) (Court concluded plaintiff may have a serious medical need for dentures after he complained he suffered cuts and bleeding, difficulty chewing, digestive difficulties and was denied dentures and a soft diet); Vazquez v. Dretke, 226 F. App'x 338 (5th Cir. 2007) (unpublished) (plaintiff's allegations of difficulty eating, headaches, disfigurement, severe pain, bleeding in his mouth, and blood in his stool because he had no dentures were "sufficient to state a claim for a serious medical need for dentures"); Stone v. Peacock, 2014 WL 172256 (S.D. Ga. Jan 15, 2014) (unpublished) (denying qualified immunity where plaintiff alleged prolonged delay in dentures, during which time he suffered severe pain, infections, stomach problems and weight loss).

Here, Plaintiff had thirteen teeth pulled at the county jail, leaving Plaintiff with only one tooth when he arrived into DOC custody. See Dkt. # 15 at 1. Plaintiff has been without any teeth

since October 3, 2006, when his last tooth was extracted. Plaintiff complains of significant weight loss (25 lbs.), continuing pain, misalignment of his jaw, difficulty chewing, digestive problems including chronic constipation, facial distortion, psychological problems, low self esteem, and speech difficulties. (Dkt. # 1 at 4-5). The record provided by Defendants supports some of Plaintiff's claims, but not all. The record reflects that Plaintiff's weight has fluctuated. The most recent record for Plaintiff's weight is dated May 23, 2013, when he weighed 223 lbs. (Dkt. # 15 at 69). When Plaintiff arrived into DOC custody in 2005, he was 6'7" tall and weighed 209 lbs. Id. at 20. On August 6, 2007, Plaintiff weighed 252.5 lbs. Id. at 28. On February 14, 2011, Plaintiff weight 236 lbs. Id. at 70. Plaintiff's weight fluctuated in 2013 - January 21, 2013 (230 lbs.); February 21, 2013 (234 lbs.); May 23, 2013 (223 lbs.). Id. at 69. While Plaintiff weighs more than when he first arrived in DOC custody in 2005, he has lost approximately 30 lbs. since 2007 and 13 lbs. between 2011 and 2013. In addition, the record demonstrates that Plaintiff was evaluated for full dentures on August 6, 2007, told he was on the "Priority II list," and that "an exemption to policy" was filed on his behalf to receive dentures. Id. at 28, 32, 33. Finally, the record reflects that Plaintiff was diagnosed with muscle-tension headaches on June 11, 2010. Id. at 65.

While the record contains a lengthy history of Plaintiff's requests for dentures and includes a 2011 grievance,[4] only the 2013 events are relevant to this instant action as the 2011 events fall

_____

[4]On October 28, 2008, a DCCC Qualified Health Care Professional informed Plaintiff that he was placed on Priority III list for dentures. (Dkt. # 15 at 35). In 2009, Plaintiff renewed his requests for dentures and began complaining of digestion issues. Id. at 37. Plaintiff was offered a "pureed diet." Id. In 2010, Plaintiff again requested dentures and was told that he is "still on [Priority] III list." Id. at 38. In January 2011, Plaintiff submitted a grievance requesting a set of dentures. Id. at 39. Defendant McCoy denied Plaintiff's request because

At the time of your arrival at [Lexington Assessment and Reception Center], the current dental policy stated that inmates who arrived edentulous would not received

outside the two-year statute of limitations.  <u>See</u> <u>Wilson v. Garcia</u>, 471 U.S. 261, 269 (1985) (statute

of limitations on a § 1983 claim is determined by reference to the statute of limitations for personal

injury actions in the forum state).[5]  On February 2, 2013, Plaintiff requested an appointment with

the dentist at DCCC.  <u>Id.</u> at 57.  An appointment was scheduled for March 21, 2013.  <u>Id.</u>  Instead of

appearing for his appointment, Plaintiff submitted a RMS on March 21, 2013, asking the dentist for

a new appointment that was not on a Thursday because Thursdays are the only time he has canteen

time.  <u>Id.</u> at 59, 61.  DOC staff told Plaintiff Thursdays are the only day his unit can see the dentist

and scheduled a new appointment for May 9, 2013.  <u>Id.</u> at 61.  On May 9, 2013, Plaintiff arrived for

---

dentures, unless there was a medical necessity.  Dr. Holland calculated your Body
Mass Index (BMI) based upon your height, 6'7", and weight, 238#.  According to
Dr. Holland, your BMI reading is currently 26.8, which indicates that you are
overweight for your height; therefore, there is no medical necessity for dentures at
this time.

Additionally, according to departmental policy, since you arrived edentulous, you
are not entitled to have dentures fabricated.

If you need further assistance with any dental concerns, you must submit a "Request
for Health Services" form (attached) to the medical unit at your facility, via the sick
call process.

<u>Id.</u>

[5]In <u>Jackson v. Standifird</u>, 463 F. App'x 736 (10th Cir. 2012) (unpublished), the Tenth Circuit
stated that,

The statute of limitations on Section 1983 claims in Oklahoma is two years.  <u>Meade
v. Grubbs</u>, 841 F.2d 1512, 1524 (10th Cir. 1988); <u>see</u> <u>also</u> 12 Okla. Stat. Ann. §
95(A)(3) (two-year limitation period on actions "for injury to the rights of another,
not arising on contract, and not hereinafter enumerated"). However, when a federal
cause of action *accrues* is governed by federal law.  <u>Alexander v. Oklahoma</u>, 382
F.3d 1206, 1215 (10th Cir. 2004). "A civil rights action [under Section 1983] accrues
when facts that would support a cause of action are or should be apparent." <u>Fratus
v. DeLand</u>, 49 F.3d 673, 675 (10th Cir. 1995) (internal quotation marks omitted).

his dentist appointment and complained of poor chewing ability and constipation.  Defendant

Hammack offered Plaintiff a soft diet, which Plaintiff refused.  Id. at 63.  On May 15, 2013, Plaintiff

submitted a RTS to Defendant Hammack complaining of chronic constipation, pain, and fears of

having impacted bowels.  Id. at 84.  Defendant Hammack offered a soft diet, stated that Plaintiff is

not eligible for dentures according to DOC criteria, and made an appointment for Plaintiff to see the

physician.  Id.  On May 23, 2013, Plaintiff is seen by Defendant Bowler and Plaintiff complained

of constipation problems.  Id. at 70.

    Significantly, the record does not reflect that, in 2013, Plaintiff complained to Defendants

Bowler and Hammack of problems identified in his civil rights complaint, namely significant weight

loss (25 lbs.), continuing pain, misalignment of his jaw, facial distortion, psychological problems,

low self esteem, and speech difficulties.[6]  The only problems Plaintiff complained of were

constipation and difficulty chewing food.  While there may be notations of "a slight mal tremor and

enlarged tongue" in Plaintiff's medical history in 2007, Plaintiff did not complain of this to

Defendants Bowler or Hammack.  Additionally, the record contains a list of Plaintiff's canteen

purchases from June 6, 2013 through December 30, 2013.  Id. at 71-82.  These records demonstrate

Plaintiff's routine purchase of food items that appear difficult for a toothless individual to consume.

For example, Plaintiff regularly purchased Laffy Taffy, kettle corn, various kinds of corn and potato

chips, crunchy cookies and candies, pizza, and granola.  Id.  It is conceivable that these purchases

could contribute to and aggravate existing digestion issues.  Further, Plaintiff repeatedly declined

---

[6]Conversely, the Court also notes that Plaintiff's medical record provides that on December
6, 2012, Defendant Bowler prescribed Plaintiff Ibuprofen, 800 mg, taken three times daily for 180
days for "headaches/pain."  Id. at 70.  However, Plaintiff never complained of headaches in the RTS
provided in the record, nor did Plaintiff raise headaches as a medical complaint in his civil rights
complaint.  See Dkt. # 1.

a soft diet. Upon consideration of Plaintiff's dietary choices, including his canteen purchases and his refusal of a soft diet, coupled with his complaints limited to digestion issues, the Court concludes that Plaintiff failed to satisfy the objective component of a § 1983 claim, requiring a showing of a serious medical need marked by sufficient pain or deprivation.

Even if the record supported a finding of a serious medical need, the record does not support Plaintiff's claim that Defendants Bowler and Hammack acted with deliberate indifference. Defendant Hammack offered a soft diet to address constipation issues and made an appointment with the physician, presumably because it was a non-dental complaint. Defendant Hammack also reviewed DOC's dental policy and proper oral hygiene with Plaintiff. Plaintiff was seen by the physician numerous times between 2011 and 2013 and had laboratory tests run for undisclosed reasons. Yet there is no record of Plaintiff raising his current allegations of physical, emotional, and mental needs to Defendants. The record does not support Plaintiff's claim that Defendants Bowler and Hammack were deliberately indifferent to a serious medical need.[7]

---

[7]Although the record does not support Plaintiff's claim that Defendants Bowler and Hammack were deliberately indifferent to Plaintiff's serious medical need, as defined and required under § 1983 standards, the Court questions the ongoing denial of Plaintiff's request for dentures based on DOC's Dental Services Policy. Under that policy, dentures are not available unless there is a "medical necessity," which can "include but is not limited to: . . . (c) [t]reatment of certain gastrointestinal diseases in which the inability to chew food may adversely affect the patient's condition." See Dkt. # 15 at 103 (OP-140124(I)(F)(1)). Although the policy's language is vague and indefinite, Plaintiff's complaint of chronic constipation may qualify as a "medical necessity" under the Dental Services Policy. Additionally, under OP-140124(I)(F)(4), dentures "will only be done if the offender has at least one calendar year remaining before discharge from the correctional system." Id. Plaintiff is serving three consecutive sentences of life without the possibility of parole and clearly satisfies the time restrictions imposed by the Dental Services Policy. Lastly, the record shows Plaintiff began requesting dentures in 2006, or more than seven (7) years ago. See Dkt. # 15 at 27. Under these facts, the Court has difficulty understanding DOC's decision to defend this lawsuit rather than provide dentures to Plaintiff.

Having reviewed the record and filings by the parties, and construing the facts in a light most favorable to Plaintiff, the Court finds there is no genuine dispute of a material fact and thus, summary judgment is proper. Defendants Bowler and Hammack are entitled to summary judgment in their favor.

**D.     Qualified Immunity**

Defendants claim they are entitled to qualified immunity for the conduct alleged by Plaintiff. Dkt. # 17 at 16. "Government officials who perform discretionary functions are entitled to qualified immunity if their conduct does not violate clearly established rights of which a reasonable government official would have known." Perez v. Unified Gov't of Wyandotte County, 432 F.3d 1163, 1165 (10th Cir. 2005) (citing Hulen v. Yates, 322 F.3d 1229, 1236 (10th Cir. 2003)); see also Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity is "an immunity from suit rather than a mere defense to liability, and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). As a result, it is critical to resolve immunity questions at the earliest possible stage in the litigation. See Saucier v. Katz, 533 U.S. 194, 199-201 (2001). In Saucier v. Katz, the Supreme Court set forth a mandatory two-prong test to resolve all qualified immunity claims. When a defendant raises a qualified immunity defense, the plaintiff bears the burden of establishing (1) that the defendant's action violated a constitutional or statutory right; and (2) the constitutional or statutory right was clearly established at the time of the conduct at issue. Perez, 432 F.3d at 1165. "If no constitutional right would have been violated were the allegations established," then no further inquiry regarding qualified immunity was required. Saucier, 333 U.S. at 201. The Supreme Court, however, stepped back from the mandatory nature of using this two-prong analysis, see Pearson v. Callahan, 555 U.S.

223 (2009), and now permits courts to "exercise [their] sound discretion in deciding whether to bypass the first question and proceed directly to the second." <u>Lynch v. Barrett</u>, 703 F.3d 1153, 1159 (10th Cir. 2013).

All of the Defendants are government employees and were acting in their official capacity during the events that gave rise to Plaintiff's complaint. They are entitled to qualified immunity from individual liability unless Plaintiff can show that their actions violated a clearly established constitutional right. <u>See</u> <u>Perez</u>, 432 F.3d at 1165. Plaintiff bears the burden of establishing the violation of a constitutional right and, as stated above, he failed to do so. Therefore, having found no constitutional violation, Defendants are entitled to qualified immunity. <u>Id.</u>

**ACCORDINGLY, IT IS HEREBY ORDERED that:**

1. Defendants' motion to dismiss or, in the alternative, motion for summary judgment (Dkt. # 17) is **granted**, as follows:

   a. Plaintiff's claims against Defendants Jones and McCoy are **dismissed without prejudice** for failure to state a claim upon which relief may be granted. 28 U.S.C. § 1915(e)(2)(B)(ii).

   b. Defendants Bowler and Hammack are entitled to judgment as a matter of law and summary judgment is entered in their favor.

2. A separate judgment shall be entered in this case.

DATED THIS 23rd day of May, 2014.

**TERENCE KERN**
**United States District Judge**

25